May it please the Court, now that this person is assembled, my name is Christina Widener-Tafts and I represent Greg Jackson in this proceeding. It's an honor and a privilege to make my first appearance before the Court. I would just like to start by saying that in this case, Magistrate Roberts got it exactly right. He was right on the facts and he was right on the law. He's a respected magistrate, 20 years on the bench, a former federal prosecutor. He said this case is one of the most egregious examples of ineffective assistance of counsel that the Court has heard of, not just seen, but heard of. He said that the idea of handling any serious criminal matter so cavalierly is troubling. In a first-degree murder case, it shocks the conscience. And he said that this is the sort of case that harms the public reputation of the judicial process. Could you talk about prejudice a little bit? I was struck that the slide wasn't pulled back and there was no cartridge in the chamber and the gun was in the pocket. So, am I looking at the right piece? Of the decedent. Yes. Of the dead person. Right. So, it was hard to see how the defendant had to shoot him to protect himself. Well, first of all, how would the defendant know whether or not the gun was chambered? He knew that they're both named Jackson. So, there's Vernon Jackson as the decedent and Greg Jackson is my client. The decedent had a reputation for violence. There's testimony There would have been testimony had Howard, the attorney, conducted any sort of investigation or had he read the discovery the night before trial. He would have found these witnesses, Mary Stills, who had testified that Vernon Jackson armed himself in direct response to seeing my client in the after-hours club. Let's say that he did. Let's say all the evidence that the lawyer did not find and put on the stand, that you're right about that. I'm still troubled by how the jury could have found self-defense, even if the lawyer had put all that on. Well, even the Alaska Court of Appeals stated that it was a tribal case of self-defense. And self-defense, it's a question for the jury. Which witness? This is the diametrically opposed stories. Jackson, my client, said that the decedent reached into his coat. He was known to carry a gun. It was reasonable to assume that that's what he was going for. They were, you know, they didn't like each other. They were kind of fighting over this So that's his story. Ford said, the eyewitness for the prosecution said that my client pinned or that the decedent didn't go for a gun, that Jackson just pulled out his gun. These are different stories. It's a question for the jury. And had Howard put on Joe Bear, who would have not only impeached Ford, the eyewitness for the prosecution, with a prior and consistent statement that he said the day after the incident when it was fresh in his mind that had he been in my client's situation, he too would have shot the decedent. But then also that he had a motive for bias because the police were pressuring him with another, with a murder charge of his own. Now, we're reviewing this under AEDPA standards. And the State Court of Appeal found that the decision not to call Joe Bear was a tactical decision not tainted by the prior failure to investigate. Now, applying the standard, objectively unreasonable determination, how can we reverse, I mean, how can we say that the State Court violated the AEDPA standards? Well, I'd like to talk to you about objectively unreasonable. I think that the best guidance on what objectively unreasonable means is the U.S. Supreme Court case of Williams v. Taylor. And in there they say, a federal court is firmly, wait, a federal court is firmly convinced that a federal constitutional right is, our difference is as to the cases in which at first blush, a state court judgment seems entirely reasonable. But thorough analysis by a federal court produces a firm conviction that the judgment is infected by constitutional error. In our view, such an erroneous judgment is unreasonable within the meaning of the act, even though that conclusion was not immediately apparent. Now, by first blush, they do appear to look through each witness. They do scrutinize it closely because even they felt it was a close case. And they were obviously troubled by counsel's failure to investigate at all. He said no investigation. And so, but this is obviously, I do believe this is a case that was infected. The judgment is infected by counsel's failure. What we're supposed to look at is the state decision and see if it was unreasonable. And I look at it, page 827 of Judge Coates, Judge Coates' decision. And he says there was a triable case of self-defense based mainly on the victim's possession of a loaded firearm. And then they say, it appears, however, that he was convicted based upon the eyewitness testimony of Albert Ford and Sherry Newkirk, the fact that Vernon Jackson's weapon did not have a round in the chamber and the location of the bullet entry wounds in Vernon Jackson's body. It does not appear that further investigation by counsel would have undermined this evidence. That looks to me like a reasonable judgment of the state appellate court on prejudice. And I don't understand why it isn't. Well, here's why it isn't. Because they're taking away from the jury the questions on credibility. You know, they say, you know, these witnesses wouldn't have undermined the defendant's guilt. Well, that's not the standard. It's whether there's a reasonable probability that they would have had a reasonable doubt had he put on these witnesses, had he, you know, challenged the state's case in an effective manner. And it's unreasonable because they are substituting their judgment for the jury's. They say, well, we don't believe these witnesses and this is what we think that he was convicted on. And I think it's obvious that the judgment was infected by Constitutional error of counsel because the failure to investigate, the failure to prepare, the failure to call these witnesses, especially the witness, Joe Bair, who would have not only, you know, with the prior and consistent statement of Ford, but also the motive for bias, I mean, those are very relevant, especially in this case where it was Ford's version of events versus my client's. They infected the trial by, you know, depriving him of his rights to cross-examine on prior and consistent statements or motive of bias. They deprived him of, you know, the right to adequately prepared counsel to make the decision whether or not to testify on your own behalf with the advice of prepared counsel. He, they, you know, they say that because he had the police reports, because he had the discovery that, you know, because the failure to investigate can be excused. But, you know, I don't think that's the case at all. I think that it was objectively unreasonable. So do you think that the law is that if there's, if counsel's deficient, you should presume prejudice? Is that what you're arguing to us? No, I think that there is, prejudice is shown by the failure to call Joe Bair, by the failure to call the other witnesses that would have testified as to the student's reputation for violence. And just the conduct of the trial, I mean, unfortunately there were other issues of counsel that weren't exhausted and so they can't be brought forth for this case. But I think it's just apparent that when counsel is so unprepared, so unfamiliar, doesn't conduct any investigation, and then as a result deprives the defendant of the trial rights by failing to call these witnesses and effectively cross-examine, especially the chief eyewitness on prior and consistent statements and motive for bias, then the judgment is infected with constitutional error. I think everybody that's looked at this thinks it's a close case, and you have the state courts one way, then the magistrate judge another way, and then the district court a third way. But given that, how can we say that what the state courts did was objectively unreasonable? Because I think when you honestly look and analyze the case, how can you say that a judgment is not infected where trial counsel, you know, basically in his arrogance, I mean, had he had an inexperienced attorney, maybe he would have been better off because they would have investigated, they would have prepared, they would have read the stuff. But he just saw, oh, well, the student was armed, and this is self-defense, and I know these cases, I do these cases all the time, and he just flew up here and read the stuff the night before without any investigation. And so, you know, I think that shows that that undermines confidence in the outcome, and then therefore the prejudice is shown, and that to conclude otherwise based on the court of appeals substitutes, you know, dismisses the witnesses because they have convictions, and because they were incarcerated with Mr. Jackson. Well, those are questions for the jury. I mean, that's what Scalia is saying in Blankley, is you can't take these things away from the jury. That's what they're there for. So it's not a point, but I mean, that's what the idea is, is that don't let the court, you know, and also they focus on his guilt, which is exactly what you're not supposed to do. You're not supposed to focus on factual culpability, but legal guilt. Would there have been a reasonable doubt? And I don't think you can honestly say, looking at this, had he done what he was supposed to do, called these witnesses, that there's not a reasonable probability that a member of the jury, and it doesn't... So we're way over the time. Okay. Thank you. Thank you, counsel. Police Court, counsel. I'm appearing on behalf of the respondent, Ms. Pugh, former Commissioner of Corrections. The issue in this case, I think that the defense's best claim is that Mr. Howard should have called Mr. Joubert. Mr. Joubert would have said two things. As it's clear, he would have said that Ford, the witness, told him that it was self-defense, and he would also have said that the police made him testify. And I think you need to look, with respect to the second statement that the police made him testify, to Judge Ripley's finding that this was not credible, and to the fact that that's presumptively correct and under the applicable statute. And also, I'd go on to say that it's certainly based on sound evidence. He called Crimestoppers. He called in to the police department, in other words, and reported this, and then met with the officer who was the husband of his boss out at Denny's Restaurant. But he definitely approached the police, and that would negate the argument that the police made him testify. At the evidentiary hearing, Howard said, calling after hearing Joubert testify at the State Court evidentiary hearing, Mr. Howard, who has quite an impressive record, has quite an impressive background in person, said that after recalling and hearing Mr. Joubert testify that it would be a waste of time to call him. And he was thinking about the fact that he had strong evidence of self-defense. He had Jackson's statement, Jackson's testimony, he had the co-defendant Danzy's testimony, the victim's very racist and very aggressive remark immediately before the murder, and plus the fact that the victim had the gun on the body. Plus, he elicited the testimony at the trial on cross-examination of Mr. Lang, the doorman, that the victim was violent, and he elicited the testimony of Ms. Danzy concerning the decedent's or the victim's large history or remarkable history of domestic violence. I would respectfully suggest that that was a good tactical decision. And then you add on the fact, you add on top of that, Mr. Joubert had four prior theft convictions. He'd been in jail with the defendant, had an opportunity to fabricate. And I would respectfully say that this is just like very much, I don't know why I didn't cite it in this court, but I repeatedly below it cited Your Honor's opinion in Green v. Henry, which is a habeas case somewhat like this. And it would have hurt the credibility of the defense to put on Joubert and all these other witnesses, particularly when the state pointed out that Mr. Chapman, one of their witnesses who claimed at the state evidentiary hearing to have been present at the time of the murder, if they put on his testimony, he would have been impeached by evidence that he was in jail at the time. Joubert was not an eyewitness to the shooting. No, no. And the court pointed that out. And so I have much more I could say. I think I would stay with regard to Stills and Howard. Mr. Howard had multiple forgery convictions. He'd been in the jail with the defendant, had an opportunity. And, you know, the big problem with the Stills and Howard testimony is that Stills could not say that Vernon Jackson went out to get his gun after meeting with Mr. Gregory Jackson because she did not know Gregory Jackson. And I believe that's the evidence in the record. Judge Ripley found this was not credible testimony of the Stills and Howard. That's presumptively correct. The reputation for violence evidence all comes from people who have been in jail with a defendant. All convictable and impeachable felons, except for one who had been convicted of rape, for sure, and possibly kidnapping. Mr. Brown, that wouldn't be admissible in state court. But even Mr. Brown had been in jail. The problem with rape and kidnapping, is there not crimes of dishonesty? Yes. So those wouldn't have actually been admissible. But still, with respect to Mr. Brown, there would have been evidence that the defendant certainly had the opportunity to fabricate. And then when you get to Mr. Chapman, who was in jail at the time, it certainly looked like that's what happened. I'd just like to say briefly that the defense in its reply brief cited the Mason case from the Sixth Circuit. And Mason refers back to Bell v. Cohn. And in Mason, they found that they applied chronic and said that there was no requirement that there be a showing of prejudice. And they did so under the first category  where this can occur, where there's no requirement of showing of prejudice. And in that instance, they talk about a denial of counsel at a critical stage. Well, Mason is different in this case. In the Bell v. Cohn category, the first category doesn't apply because the first category requires government interference with a right to counsel. And Mason, the attorney, had been suspended from practice 30 days before the trial and couldn't practice and didn't practice during that time. And he only saw his client for six minutes. And interestingly enough, Mason approves a case by the name of Scroggie where the defense attorney in that case, who was claimed to be ineffective like Mr. Howard here, had actually saw his client a shorter time than Mr. Howard saw Mr. Jackson in this case, and the Sixth Circuit said that that was not ineffective. Thank you, Your Honors. Thank you, Counsel. Jackson v. Hsu is submitted. We'll hear United States v. U.S. Thank you, Your Honors.
judges: Hall, Kleinfeld, Wardlaw